**FIRSTUL MORTGAGE COMPANY,**
Appellee,

v.

**Albert J. OSKO and Lucille M.
Osko, Appellants.**

**No. 51890.**

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 23, 1979.

Released for Publication by Order of
Court of Appeals Nov. 29, 1979.

Conner, Winters, Ballaine, Barry & McGowen by Gary R. McSpadden, Tulsa, for appellee.

Doyle, Holmes, Gasaway & Green by Charles S. Holmes, Tulsa, for appellants.

ROMANG, Presiding Judge:

The Plaintiff-Appellee (Firstul Mortgage Company) brought this action against the Defendant-Appellants (Albert J. and Lucille M. Osko) and others to foreclose a second mortgage on the Oskos' homestead given as security for a promissory note. A deficiency judgment on the promissory note was not sought. The Oskos affirmatively pleaded failure of consideration to support the mortgage. The Plaintiff initially waived a jury trial and later approved the Oskos' demand for a jury trial. On trial to the court sitting without a jury the trial court held for the Plaintiff, and the Oskos appeal.

On appeal the Oskos raise essentially three issues: (1) the improper denial of a jury trial, (2) insufficiency of the evidence, and (3) inconsistency of the court's findings.

**A.**

■ The Oskos elaborately urge this Court to reverse the trial court's decision that there was no right to a jury. They argue that direct precedent is erroneous in that it is inconsistent with Article 2 § 19 of the Oklahoma Constitution, that in any event they are entitled to a jury trial on their "counterclaim" for rescission of a contract for failure of consideration, and that the waiver of homestead exemption is a personal right as to which a jury trial is essential. We find the Oskos' argument misplaced.

The Oskos admitted the validity, execution and amount of the promissory note. They also admitted the execution of the mortgage. At pre-trial they amended their answer to deny that the notes (there were 2–3 renewals of the original note) and mortgage "were given for good and valuable consideration . . . ." On appeal this is equated with a "failure of consideration." Factually, the Oskos' position is that the note and mortgage were given to procure a $56,000 loan to pay off certain indebtedness owed to the First National Bank and Trust Co. of Tulsa (Bank) and for an oral promise from an agent of Plaintiff that Plaintiff would assist the Oskos by financing certain undefined capital needs of the Oskos' business. The "failure of consideration" alleged is that the Plaintiff has not provided the capital financing promised. The argument is that this denial of a "good and valuable consideration" amounted to a counterclaim for rescission of the contract for failure of

consideration and the restitution by both sides as to partial consideration already advanced, i. e. the Oskos return the loan plus interest and the Plaintiff return (i. e. cancel) the mortgage. The Oskos rely on 15 O.S.1971, § 233A for the proposition that their plea is "notice of rescission and of an offer to restore . . . [the money]." They finally argue that inasmuch as their "counterclaim" for rescission is an "action at law" that they are constitutionally entitled to a jury trial.

There are numerous problems with this position. In the first place, the Oskos never filed an "action, counter claim [sic], cross claim or plea in intervention . . ." under 15 O.S.1971, §§ 233A or 233B. Consequently, all the cases cited concerning the propriety of a jury trial where an action at law is filed as a counterclaim are irrelevant. Secondly, the phrase "failure of consideration", while widely used by bench and bar, is a useful shorthand phrase rather than a descriptive phrase, at least in the context of this case. Here it describes the Plaintiff's alleged partial breach of contract as an excuse for the Oskos cancelling the contract and seeking restitution.[1] Furthermore, the actual pleading is simply a denial of the existence of a contract under which the mortgage was given due to the lack of consideration. This plea, if good, establishes a defense but it hardly rises to the kind of plea necessary to activate 15 O.S.1971, §§ 233A and 233B. Without the aid of those provisions there is no record offer by the Oskos to make restitution as would be required in an action to rescind a contract.

■ In sum, as pleaded and presented there was no counterclaim (equitable or legal) so there was no basis for the Oskos' demand for a jury trial in light of Gee v. Security Bank and Trust Co., 186 Okl. 477, 98 P.2d 922 (1939). While the Oskos urge us to disavow this precedent they present no cogent reason for doing so. Merely calling their affirmative defense a counterclaim based on a legal cause of action does not make it so.

■ No authority is cited for the unique argument that there must be a jury trial for any action to foreclose a mortgage of a homestead as it is a "waiver" of the "personal" rights of homestead and not merely in rem. Such an argument flies in the face of countless actions in the history of our state. The mere fact an argument has never been raised does not mean it will not be judicially recognized. The history of our courts proves that. But a new argument calculated to result in major changes in an area of the law of frequent utility bears a heavy burden. The burden is not met in this case.

### B.

The Oskos argue that the evidence clearly establishes a collateral oral agreement that was breached. It is clear from the record that Albert Osko and the Plaintiff's agent agreed that Plaintiff would assist Osko in remaining in business and would do all it could by way of additional financing. The instant note was extended 2–3 times and additional loans were made and paid off.

■ While the parties basically emphasize whether there was an oral collateral agreement we see the issue with different emphasis. The trial court's oral decision stated, inter alia :

Now, the burden of proof . . . as to the existence of the oral agreement and to the specificity of the terms to the extent that it would rise to the dignity of a contract, and that is, was there a meeting of the minds and the other elements necessary for a contract as well as to show a breach of that agreement so as to be able to rely on a failure of considera-

1. Although the terminology of rescission and cancellation has not been distinguished in the cases the distinctions drawn in the Uniform Commercial Code are perhaps useful in the general body of Contract law. In 12A O.S. 1971, § 2–106(4) "cancellation" is said to occur "when either party puts an end to the contract for breach by the other . . . ." Comment 3 to 12A O.S.1971, § 2–209 indicates the term "rescission" is to be used to indicate the mutual agreement to end a contract. We will use this distinction throughout. See Calamari and Perillo, The Law of Contracts (2nd Ed. 1977) § 21–2.

tion of defense does fall upon the defendant in this case. (Emphasis added.)

We believe there is little doubt that the parties orally agreed that the Plaintiff would do what it could to help finance the Oskos' business. But that agreement is not enough for an enforceable contract to be found. Fifteen O.S.1971, § 104 provides "[w]here a contract has but a single object, and such object is . . . so vaguely expressed as to be wholly unascertainable, the entire contract is void." While voidness for uncertainty is not favored, *Dunn v. Dunn*, Okl., 391 P.2d 885 (1964), it is necessary that the parties agree so that a court can determine what each is expected to do in order that the court may determine the existence of a breach and formulate a remedy. The Restatement of Laws (Second) Contracts (T.D. 1–7, 1973) in § 32 provides:

Certainty

(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

(2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

See also Calamari and Perillo, *supra*, § 2–13; 1 Corbin on Contracts § 95 and 1 Williston on Contracts § 37.

■ Here an agreement exists. But the parties left nearly all the terms to future agreement or negotiation. While there has been some performance under the agreement there is no way to determine whether the Plaintiff did all it promised or not, to define a standard of proper performance, or to determine a breach. Since there is not a total lack of consideration, we must conclude as the trial court did.

■ The allegation of inconsistency falls when it is recognized that while the trial court found there was a general agreement he still found there was no agreement as to the details necessary for there to be a legally recognizable contract.

The judgment is affirmed.

AFFIRMED.

BOX, J., concurring.

REYNOLDS, J., not participating.